IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL SCHUTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| CITY OF TRUMAN, MINNESOTA, | ) |
| | ) |
| Defendant. | ) |

Plaintiff, Michael Schutz ("Schutz"), by the undersigned attorneys, makes the following averments:

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 - 4333 ("USERRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b).

3. Venue is proper in this district under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b). Defendant, City of Truman, Minnesota lies within this district. Additionally, a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

4. Schutz resides in Fairmont, Minnesota, which is within the jurisdiction of this Court.

1

5.     The City of Truman, Minnesota is a city of approximately 1,100 residents located in Martin County.

## COUNT I (RE-EMPLOYMENT)

6.     In 1994, Schutz enlisted in the United States Navy.  He served on active duty for three years on the USS Camden before entering the Navy Reserves in 1997.  He attained the rank of E5 reservist.

7.     In 2001, Schutz entered the United States Army and was assigned to the 79th Military Police Company (Combat Support) out of Rochester Minnesota as a Military Police Officer.

8.     Schutz served in that unit in Iraq from April 2003 through April 2004 and at Bagram Air Base in Afghanistan from August 2005 through August 2006.

9.      In October 2007, Schutz reentered the United States Navy Reserves as an E6 Master at Arms in the Naval Security Forces.  He was stationed out of Fort Snelling in Minneapolis, and supported the Navy base in Rota, Spain.

10.     Schutz was hired as a full-time police officer for the City of Truman, Minnesota ("the City") in April 2005.  His regular schedule was ten eight-hour shifts every two weeks, but he occasionally worked additional hours as needed.

11.     At the time he was hired, Schutz and Chief Robert Meschke were the only full-time officers employed by the City.  On information and belief, the City employed several other officers on an as-needed basis to work when Schutz or Chief Meschke were unavailable or to assist with special events. On information and belief, the City hired

Justin Jobe as a full-time officer in the fall of 2005, and Jobe became Chief in the fall of 2006.

12. In July 2009, the Navy Reserves notified Schutz that he was being activated to Kuwait in support of Operation Iraqi Freedom. His orders provided for a deployment from November 27, 2009 through November 5, 2010.

13. In or around July 2009, Schutz informed his supervisor, Chief Jobe, that the Reserve had ordered him mobilized.

14. On November 27, 2009, Schutz reported for active duty.

15. During his deployment to Kuwait, Schutz served as an Investigator for the Third Army.

16. On information and belief, the City increased the work hours of part-time Officer Chad Bonin to 30 hours a week as a replacement for Schutz while Schutz was away on military service.

17. Schutz returned home from Kuwait to Fairmont, Minnesota in October 2010. He was honorably discharged from the Naval Reserves in December 2010.

18. On or about October 24, 2010, Schutz contacted his supervisor Chief Jobe indicating his desire to return to work on November 29, 2010.

19. On or about October 27, 2010, Chief Jobe informed Schutz that his position would be changed from full-time to part-time effective on his first shift back on November 29, 2010. Schutz's regular part-time schedule was to be only for thirty hours a week, compared to the forty-hour per week regular schedule he previously had as a full-time officer.

20. On or about November 2, 2010 Chief Jobe informed Schutz via email that Schutz would not be receiving the $550 uniform allowance he had received in all of his past years because his position was changed to part-time.

21. Upon Schutz's return to employment as a part-time officer, the City continued to employ Bonin as a part-time office. Bonin worked approximately 30 hours per week in November.

22. On or about November 16, 2010, one day after Schutz returned to paid status, Chief Jobe sent an email to Schutz and Officer Bonin stating that the City had received State funding for 18 extra hours of police work as part of the "Safe and Sober" Campaign for the month of December. Chief Jobe offered the hours on a "first-come, first-serve" basis. Bonin responded first and claimed all 18 hours of work, although he eventually shared some hours with Schutz over Jobe's initial objection to Bonin doing so.

23. On or about November 27, 2010 Chief Jobe informed Schutz, Bonin, and Joe Larson (another part-time officer), that effective November 29, 2010 part-time officers would no longer be allowed to take the police squad car home after their shifts.

24. The City failed to re-employ Schutz after his return from service in the full-time police officer position he would have had if had remained continuously employed, with all the attendant benefits, or a position of like seniority, status and pay, thereby violating USERRA, 38 U.S.C. §§4312 and 4313.

25. The City's violation of Schutz's right to reemployment under USERRA was willful.

26. Because of the City's conduct, Schutz has suffered monetary damages, a loss of benefits, and a loss of opportunities in an amount to be proven later at trial.

## COUNT II (RETALIATION)

27. The United States hereby incorporates paragraphs 1 through 23 above as if fully set forth in this count.

28. On or about December 6, 2010, Schutz filed a complaint with the United States Department of Labor, Veterans' Employment and Training Service ("VETS") alleging that the City violated his rights under USERRA by failing to re-employ him in a full-time police officer position.

29. VETS informed the City of Schutz's complaint by correspondence dated December 8, 2010.

30. On December 27, 2010, Chief Jobe filed an "Allegation of Misconduct" against Schutz, which alleged that Schutz claim approximately three and a half hours of time on his time cards more than he had actually worked during the four weeks (approximately 100 hours) since Schutz returned from his deployment.

31. On information and belief, Chief Jobe was required by policy of the City to approve Schutz's timecards before they were paid. Chief Jobe had approved both of the timecards on which the Allegation of Misconduct was based.

32. On December 30, 2010, Chief Jobe called Schutz to the police station and informed him of the Allegation of Misconduct. Chief Jobe required Schutz to surrender his badge, radio, and keys. Schutz was placed on paid administrative leave immediately.

33. On information and belief, after Schutz's suspension all of Schutz's scheduled hours were worked by Bonin.

34. On information and belief, Chief Jobe requested that the City of Fairmont police department conduct an investigation regarding the Allegation of Misconduct, but the City of Fairmont declined, believing the investigation was "ill-advised."

35. Chief Jobe then requested that the Faribault County Sheriff's Office conduct an investigation into the Allegation of Misconduct.

36. The Faribault County Sheriff's Office completed its investigation on February 10, 2011. The findings indicated inaccuracies of approximately one and three quarter hours on Schutz's time cards, amounting to approximately $25 in wages.

37. On February 24, 2011, VETS sent a determination letter to the attorney for the City finding merit in Schutz's claim of improper reinstatement under USERRA.

38. On March 17, 2011, Schutz received a letter from the City, notifying him that the City intended to terminate him for "misconduct," more specifically "falsification of payroll records and submission of same for pay."

39. Schutz timely requested a hearing under Minnesota's Veterans' Preference Act, Minn. Stat. § 197.46, to challenge the termination, and that proceeding is pending.

40. The Department of Labor referred Schutz's reemployment claim and an additional claim of retaliation, in violation of 38 U.S.C. § 4311 to the Attorney General on May 3, 2011.

41. The City's disciplinary investigation of Schutz, his suspension, and its efforts to terminate him were motivated by Schutz's assertion of his rights under USERRA and were therefore in violation of USERRA, 38 U.S.C. § 4311(c).

42. The City's retaliation against Schutz for his exercise of his USERRA rights was willful.

43. Because of the City's conduct, Schutz has suffered monetary damages, a loss of benefits, and a loss of opportunities in an amount to be proven later at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Schutz prays that the Court enter judgment against the City of Truman as follows:

44. Declare that the City's failure to reemploy Schutz in his full-time police officer position was unlawful and in violation of USERRA, 38 U.S.C. §§ 4312 and 4313;

45. Declare that the City's initiation of an investigation and efforts to discharge Schutz were unlawful and in retaliation for Schutz's exercise of his rights under USERRA, in violation of 38 U.S.C. § 4311;

46. Declare that the City's violations of 38 U.S.C. §§4311-4313 were willful, pursuant to 38 U.S.C. §4323(d)(1)(C);

47. Require that the City fully comply with the provisions of USERRA by offering to reemploy Schutz in a position of like pay, status and benefits as the position he would have had if he had not been called away on military service;

48. Require that the City fully comply with the provisions of USERRA by paying Schutz all amounts due to him for his loss of wages and any lost benefits caused

by the City's failure or refusal to comply with the provisions of this law, and liquidated damages under 38 U.S.C. § 4323 for its willful violation of USERRA;

49. Enjoin the City of Truman from taking any action against Schutz that fails to comply with the provisions of USERRA, including its pursuit of his termination;

50. Award Schutz prejudgment interest on the amount of lost wages and benefits found due; and

51. Grant such other and further relief as may be just and proper.

Dated: September 30, 2011

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
United States Department of Justice

DELORA KENNEBREW
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

JODI B. DANIS
Special Counsel
JOSEPH J. SPERBER IV
Senior Trial Attorney
Email joseph.sperber@usdoj.gov
United States Department of Justice
Civil Rights Division
Employment Litigation Section

B. TODD JONES
United States Attorney for the
District of Minnesota

By: s/ Ana H. Voss
ANA H. VOSS
Assistant U.S. Attorney
Attorney Registration No. 483656
United States Attorney's Office
600 U.S. Courthouse, 300 South Fourth Street
Minneapolis, MN  55419
Telephone:  (612) 664-5600
Fax:  (612) 664-5788
Email:  ana.voss@usdoj.gov

ATTORNEYS FOR PLAINTIFF MICHAEL SCHUTZ